E-FILED
Monday, 18 September, 2006 10:00:43 AM
Clerk, U.S. District Court, ILCD

# United States District Court

CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

TERENCE E. MERRITT

**CRIMINAL COMPLAINT**

CASE NUMBER: 06-M-7227

**FILED**
SEP 1 8 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __September 10, 2006__ in __Champaign__ county, in the __Central__ District of __Illinois__ defendant(s) did:

knowingly kidnap Antonio Aguas

in violation of Title __18__ United States Code, Section(s) __1201 and 2__

I further state that I am a(n) __FBI Special Agent__ and that this complaint is based on the following facts:
Official Title

See attached affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

s/L. Bradlee Sheafe
Signature of Complainant

Sworn to before me and subscribed in my presence,

s/Michael P. McCuskey           at   Champaign, Illinois
Date: September 16, 2006              City and State

Michael P. McCuskey
United States District Judge                    s/Michael P. McCuskey
Name & Title of Judicial Officer                Signature of Judicial Officer

At 4:35 pm

# AFFIDAVIT

I, L. Bradlee Sheafe, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since February 1997. I am currently assigned to the Champaign Resident Agency of the FBI Division in Springfield, Illinois. I have participated in investigations of criminal offenses, including the offense named herein.

2. This affidavit is made in support of a criminal complaint and arrest warrant charging Adrian Lopez and Terence E. Merritt with Kidnapping, in violation of Title 18, United States Code, Section 1201.

3. I am familiar with the following facts from my personal observations and investigations, as well as reliable information officially provided to me by other law enforcement agents.

4. Antonio Aguas and his brother Ramiro Aguas, both residents of Champaign, Illinois, own several La Bamba restaurants.

5. On the evening of September 10, 2006, Antonio Aguas telephoned his wife, indicated to her that he would be gone for two to three weeks, and asked her to pick up his car.

6. On September 11, 2006, at approximately 12:00 p.m., local law enforcement authorities in Illinois were notified of a missing person, Antonio Aguas. Employees of the La Bamba restaurant, located at 1905 Glenn Park Drive, Champaign, arrived the morning of September 11, 2006, and observed Antonio Aguas's car parked on the west

side of the restaurant, perpendicular to the parking spaces on that side of the building. The driver's side window of the car was all the way down, and there were no keys in the car. (Antonio Aguas is the owner of that restaurant).

7. Also on September 11, 2006, at approximately 3:30 p.m., Antonio Aguas' brother, Ramiro Aguas, received a call on his cell phone from an unknown person who claimed to be holding Ramiro Aguas' brother. At the time, Ramiro Aguas was visiting relatives in Mexico. The caller instructed Ramiro to return to the United States, and told Ramiro that, if Ramiro told anyone about the call, Ramiro would never see his brother again. The person said he would call Ramiro on September 12, 2006, in the United States. Thereafter, Ramiro returned to the United States.

8. On September 12, 2006, Ramiro received another call on his cell phone, again from an unknown person. The caller told Ramiro to obtain $250,000. The unknown person said he would call Ramiro on September 13, 2006, with additional instructions.

9. On September 13, 2006, at 2:22 p.m., an unknown person called Ramiro and told Ramiro to go to Bloomington. When Ramiro explained to the caller that he did not yet have the money together, Ramiro was told to head to Bloomington immediately. At 4:36 p.m., the unknown person placed another call to Ramiro. The caller asked Ramiro if he was in Bloomington at that time. Ramiro said he had the money and was leaving for Bloomington. At 8:17 p.m., the unknown person called Ramiro again. That call was determined to have been made from a pay phone at a gas station in Peru, Illinois. The caller explained that $250,000 was only the tip of the iceberg. The person also said

Antonio was not in Illinois and that "Big Guys" will want more money. The unknown person said he would allow Ramiro to speak to his brother.

10. Through a series of monitored telephone calls from September 13 through 16, 2006, Ramiro was directed to a BP gas station in Fort Wayne, Indiana, where he was to drop off the $250,000. This location was placed under surveillance prior to Ramiro arriving.

11. Through investigation, law enforcement agents were aware that one of the kidnappers recently contacted a towing company. Further, the agents were aware that one of the kidnappers might be arriving to retrieve the ransom money in a tow truck.

12. On September 15, 2006, at approximately 8:25 a.m., Ramiro dropped the ransom money at the BP gas station and left the area. Shortly thereafter, a tow truck arrived at the gas station. Surveillance agents watched Adrian Lopez leave the passenger side of the tow truck, retrieve the bag of ransom money, and then re-enter the tow truck.

13. The tow truck was covertly followed to a convenience store where Lopez purchased a bag into which he placed the ransom money. The tow truck then drove to a wooded area where it briefly stopped. The driver of the tow truck took the original ransom bag into the woods and returned empty-handed.

14. The tow truck finally traveled to a Midas automotive store. Both Lopez and the driver left the truck. Shortly thereafter, Lopez was arrested sitting on a bench next to the driver outside the Midas store. At the time of his arrest, Lopez was in possession of the new bag containing the ransom money.

15. At the same time, additional investigation indicated that Antonio Aguas might be held at a Budget Inn, 1411 U.S. 27 North, Portland, Indiana. Consequently, law enforcement agents contacted the owner of the Budget Inn who advised the agents that Room 15 was receiving an unusual number of telephone calls. The owner further described one of the occupants of the room as an older, Hispanic male matching the description of Antonio Aguas.

16. Law enforcement agents established surveillance on the room and observed someone inside the room frequently peeking through or moving the window curtains.

17. Shortly after Lopez's arrest at the Midas store, agents knocked and announced their presence to Room 15. When the occupant of the room, Terence Merritt, opened the door, he was momentarily secured. Immediately upon entering the room, the agents saw the Antonio Aguas sitting in the room, unrestrained. At this point, Merritt was placed under arrest.

18. After being advised of his *Miranda* rights and waiving those rights, Lopez confessed to his involvement, and Merritt's involvement, in the Aguas' kidnapping.

FURTHER AFFIANT SAYETH NOT.

s/L. Bradlee Sheafe
_____
L. Bradlee. Sheafe, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this
16th day of September, 2006.

s/Michael P. McCuskey
_____
MICHAEL P. McCUSKEY, District Judge
United States District Court

-5-